## AFFIDAVIT OF SPECIAL AGENT ANDREW DAWSON

I, Andrew Dawson, being duly sworn, depose and state as follows:

1. I am a Special Agent with the United States Postal Service, Office of Inspector General ("USPSOIG") assigned to the USPSOIG Northeast Area Field Office. I have been employed as a Special Agent for eleven years. My duties and responsibilities include, but are not limited to, investigating criminal matters related to the United States Postal Service ("USPS"). I have received extensive training in criminal investigations and criminal law, and I have assisted senior Special Agents and other law enforcement agents in numerous criminal investigations and in the execution of search warrants. I have also completed numerous training courses sponsored by the USPSOIG and other law enforcement agencies including narcotics-specific trainings. I have received training from the USPSOIG in the investigation of controlled substances and proceeds/payments for controlled substances being transported through the United States Mail. I have also received asset forfeiture training and have consulted with senior Special Agents and other law enforcement agents and asset forfeiture specialists.

## PURPOSE OF AFFIDAVIT

2. I submit this affidavit in support of an application for a criminal complaint charging John NOVIELLO (born 1961) with bribery of a public official, in violation of 18 U.S.C. § 201(b)(1)(C), and distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1).

3. I am familiar with the facts and circumstances of this investigation from my own participation in it and reports from other law enforcement agents. This affidavit is submitted for the limited purpose of establishing probable cause to believe that NOVIELLO has committed the above offenses. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in the investigation of NOVIELLO. I have set forth only the facts that I believe are necessary to establish the requisite probable cause.

## STATUTES

4. 18 U.S.C. § 201(b)(1)(C) prohibits the giving, offering, or promising of anything of value, directly or indirectly "to any public official . . . with intent – to induce such public official to do or omit to do any act in violation of the lawful duty of such official or such person."

5. 18 U.S.C. § 201(a)(1) provides in relevant part that a public official includes "an employee . . . acting for or on behalf of the United States, or any department, agency or branch" of the United States Government.

6. 21 U.S.C. § 841(a)(1) provides in relevant part that "it shall be unlawful for any [unauthorized] person knowingly or intentionally – to . . . distribute . . . a controlled substance."

## PROBABLE CAUSE

7. NOVIELLO is a United States Postal Service ("USPS") carrier assigned to the Lowell Post Office. NOVIELLO has been employed by the USPS since approximately 1993.

### A. NOVIELLO's Bribe

8. On February 15, 2022, the Acting Postmaster from the Lowell, Massachusetts Post Office contacted USPSOIG and advised that on February 15, 2022, NOVIELLO offered a USPS Customer Service Supervisor (the "USPS Supervisor") money to assist NOVIELLO in the illegal interception of packages that NOVIELLO suspected contained drugs.

9. Agents interviewed the USPS Supervisor on February 15, 2022 and February 17, 2022. The USPS Supervisor said that on February 15, 2022 and again on February 16, 2022, NOVIELLO asked the USPS Supervisor to assist him in a scheme to intercept packages containing "kilos" and offered to pay the USPS Supervisor $1,750 per kilo that NOVIELLO successfully obtained from the diverted packages. NOVIELLO instructed that if the intended recipient called looking for a package that NOVIELLO had diverted, the USPS Supervisor was

to lie to the customer and claim that he was a United States Postal Inspector. The USPS Supervisor was further to tell the customer something to the effect of that the customer would have to come to the post office with an identification and provide "more information" before the package could be released to the customer.[1] The USPS Supervisor understood these instructions to mean that NOVIELLO sought to scare off the customer from actually doing anything to recover the missing package. NOVIELLO never said the word "drugs" when discussing the packages, but it was clear to the USPS Supervisor that he wanted drugs because of the reference to payment based on kilos. NOVIELLO also said he was particularly interested in packages from Puerto Rico. I know based on my training and experience that Puerto Rico is a common source for illegal narcotics shipped into the mainland United States via the USPS. NOVIELLO boasted that he had been conducting the same scheme with another supervisor for about 15 years and that he pays for his second home with money from the scheme.

     10.     On February 17, 2022, NOVIELLO put approximately $850 in a Dunkin' bag in the USPS Supervisor's vehicle. Based on my training and experience, and knowledge of the investigation, I believe that in leaving the cash, NOVIELLO attempted to bribe the USPS Supervisor. The morning of February 17, 2022, as the USPS Supervisor was driving his car out of the Downtown Lowell Post Office for a work-related trip, he encountered NOVIELLO. The two men engaged in small-talk and NOVIELLO reached into the passenger side window (which was open) of the USPS Supervisor's car and grabbed a Dunkin' bag sitting on the seat. The paper bag contained a muffin, which the USPS Supervisor offered to NOVIELLO. NOVIELLO said "no" and then placed the bag back onto the seat. The USPS Supervisor did not touch the

---

[1] I know based on my knowledge of United States Postal Service policies and procedures that among the "lawful duties" of the USPS Supervisor is to receive and respond to customer inquiries and complaints.

bag again until the next day, February 18, 2022, when he looked inside it as he cleaned his car. The USPS Supervisor noticed an envelope containing $850 in cash in the bag, split between eight $100 bills and one $50 bill.[2] The USPS Supervisor furnished the money to agents, and it is maintained as evidence in this case.

11.     Thereafter, the USPS Supervisor agreed with agents to consensually audio-record his conversations with NOVIELLO regarding the proposed bribe.[3] On February 22, 2022, the USPS Supervisor had a conversation with NOVIELLO that was consensually recorded. During this conversation, the USPS Supervisor asked NOVIELLO about the money that he had left in the car, telling NOVIELLO that he "didn't even know" there was money in the bag. NOVIELLO boasted that he was "sly" and "that was a nice envelope . . . for starters." The USPS Supervisor again inquired about what he should say to customers who inquire about missing packages. NOVIELLO instructed, "If somebody calls, you just say, like, if somebody calls you say they're missing paperwork." NOVIELLO said that customers "lie" and "act stupid" by claiming that the package contains an innocuous item like a "Gucci belt."

12.     Later, the USPS Supervisor expressed concern about getting involved where a recipient may eventually receive an empty box without drugs in it. NOVIELLO responded that he was not worried about such situations by saying, "You know how many times I've had fucking five gang members at the door? And it's an empty package I give them, you know how many times I've done that? Like fucking 30 times." Based on my training and experience, I

---

[2] Based on my understanding of this incident, the USPS Supervisor did not see NOVIELLO place anything in the bag at the time NOVIELLO took it from the passenger seat.

[3] The USPS Supervisor does not have a criminal record. He volunteered to assist investigators in this case, but it not being compensated or otherwise tangibly rewarded for his information and cooperation. I consider the USPS Supervisor to be reliable and information provided by him has been corroborated to the extent possible.

believe that NOVIELLO's reference to dealing with gang members further corroborates that NOVIELLO wants the USPS Supervisor to intercept packages containing illegal drugs.

B.  **NOVIELLO's Distribution of Cocaine**

13. Given NOVIELLO's involvement in illegal narcotics, under the supervision and direction of agents, the USPS Supervisor inquired if he could obtain cocaine from NOVIELLO. On April 15, 2022, under the supervision and direction of agents, the USPS Supervisor met with NOVIELLO to arrange this deal. That meeting was audio- and video-recorded. During that meeting, the USPS Supervisor asked NOVIELLO for a "little bit" of the "other stuff" for the USPS Supervisor's "friend." NOVIELLO responded that he could sell the USPS Supervisor an "eight-ball" for "$200," and they agreed to a future deal. Based on my training and experience, I know that an "eight-ball" is a slang for an eighth of an ounce, or 3.5 grams, of cocaine.

14. On April 20, 2022, as described below, NOVIELLO sold approximately 4.1 grams of cocaine to the USPS Supervisor for $200. This meeting was audio- and video-recorded. On April 20, 2022, agents met with the USPS Supervisor and provided him with $200 in Official Authorized Funds. Agents also searched the USPS Supervisor for contraband and money before and after the drug deal with negative results. The USPS Supervisor was surveilled to the meeting location with NOVIELLO. At approximately 12:52 p.m., NOVIELLO arrived at the meet location driving a white Subaru bearing New Hampshire registration 4983017 and registered to NOVIELLO. NOVIELLO stopped his car and then approached the USPS Supervisor's vehicle, which was nearby. NOVIELLO opened the front passenger door of the USPS Supervisor's vehicle and placed an item on the front passenger seat. NOVIELLO then leaned into the passenger window and received the $200 in cash from the USPS Supervisor. NOVIELLO then closed the door, returned to his car and departed the area. After NOVIELLO departed, agents searched the USPS Supervisor's car and located a plastic baggie containing a

white, powdery substance that was wrapped in a brown paper towel on the front passenger seat. Field testing of the substance showed that it contained cocaine. The item weighed approximately 4.1 grams including packaging. The powder was sent to the Postal Inspection Service Forensic Laboratory, and testing is pending.

## CONCLUSION

15. Based on the foregoing, there is probable cause to believe that on February 17, 2022, NOVIELLO committed the offense of bribery of a public official, in violation of 18 U.S.C. § 201(b)(1)(C), and on April 20, 2022, NOVIELLO committed the offense of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1).

16. I request that Court issue the requested criminal complaint, and I declare that the foregoing is true and correct.

ANDREW DAWSON
Special Agent, USPS, Office of Inspector General

Subscribed and sworn to me by telephone in accordance with Fed. R. Crim. P. 4.1 before me, this 11 day of May, 2022 at 4:43 p.m.

Honorable Jennifer C. Boal
United States Magistrate Judge



6